Mark E. Anderson
Montana Bar No. 4371
MARK ANDERSON ATTORNEY AT LAW PLLC
4677 Crackerville Road
Anaconda, MT 59711
Telephone: (406) 546-1771
markandersonattorneyatlawpllc@gmail.com

-with-

Joseph J. Gleason, Esq. (*pro hac vice* motion forthcoming)
GLEASON LAW LLC
780 Morosgo Drive #14084
Atlanta, Georgia 30324-9998
Telephone: 404-594-3550
joe@gleason.legal

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| GALILEA, LLC and TAUNIA KITTLER<br><br>           Plaintiffs,<br><br>v.<br><br>PANTAENIUS AMERICA LIMITED, ANDREA M. GIACOMAZZA, AGCS MARINE INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, and TORUS INSURANCE COMPANY,<br><br>           Defendants. | Cause No. _____<br><br><br>**COMPLAINT**<br><br>*(Jury Trial Demanded)* |

Plaintiffs Galilea, LLC and Taunia Kittler, for their Complaint, state and

allege as follows:

## PARTIES

1.     Plaintiff Galilea, LLC is a single-purpose limited liability company organized under the laws of Nevada and formed by Chris and Taunia Kittler ("the Kittlers") for the purpose of owning their sailing yacht "Galilea," a 60-foot 2011 Privilege 615 catamaran. Chris and Taunia Kittler are the sole and managing members of Galilea, LLC.

2.      Plaintiff Taunia Kittler resides in Melville, Montana and is a citizen of Montana, and, thus both she and Galilea, LLC are citizens of Montana.

3.     Defendant Pantaenius America Limited (Pantaenius") is an insurance company registered with the Montana Office of the Commissioner of Securities & Insurance. Pantaenius is organized under the laws of New York and has its principal place of business in Harrison, New York. Pantaenius is a citizen of New York.

4.     Defendant Andrea M. Giacomazza is an insurance broker licensed by the State of New York. Upon information and belief, Ms. Giacomazza is employed by Pantaenius. Upon information and belief, Ms. Giacomazza is a resident of New York.

5.     Defendant AGCS Marine is an insurance company registered with the Montana Office of the Commissioner of Securities & Insurance.  AGCS Marine is

organized under the laws of Illinois and has its principal place of business in Chicago, Illinois. ACGS is a citizen of Illinois.

6.     Defendant Liberty Mutual is an insurance company registered with the Montana Office of the Commissioner of Securities & Insurance. Liberty Mutual is organized under the laws of Massachusetts and has its principal place of business in Boston, Massachusetts. Liberty Mutual is a citizen of Massachusetts.

7.     Defendant Torus is an insurance company that appears to be registered with the Montana Office of the Commissioner of Securities & Insurance. Torus is organized under the laws of Delaware and has its principal place of business in Jersey City, New Jersey. Torus is a citizen of Delaware and New Jersey.

## JURISDICTION AND VENUE

8.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because there is diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

9.     This Court has jurisdiction over Galilea, LLC's claim for a declaratory judgment under 28 U.S.C. § 2201.

10.     Venue is proper in the District of Montana under 28 U.S.C. § 1391.

## FACTS

11.     This dispute is about whether the "Broker Defendants" (Pantaenius

and Giacomazza) failed to properly procure insurance as requested by Plaintiffs, and whether the "Insurer Defendants" (AGCS, Liberty Mutual and Torus) have wrongfully and unreasonably denied coverage for the loss of the Kittler's yacht, Galilea, which was destroyed when run aground on June 24, 2015.

12.    In May 2015, the Kittlers were sailing the Galilea in the Caribbean, including with their two children and Taunia Kittler's father, headed towards the Panama Canal and ultimately a marina in San Diego, California, which was to be Galilea's home port.

13.    The Kittlers were evaluating potential new insurers for Galilea, and a contact had recommended Pantaenius.  Chris Kittler researched Pantaenius online, viewing its website, which advertises that "Pantaenius has brokered insurance since 1899, that Pantaenius is "the leading yacht insurance provider worldwide" and provides "comprehensive yacht insurance cover[age]," including "[c]overage for worldwide navigation."  Pantaenius also marketed itself as being "always at your side."

14.    On or about May 7, 2015, Chris Kittler completed a basic questionnaire and submitted it to Pantaenius.

15.    The questionnaire did not ask for the current location of Galilea, and it did not disclose that the location information that was requested by the questionnaire would be used to purportedly limit the geographical scope of

insurance coverage for Galilea.

16.     In response, on May 7, 2015, Pantaenius, acting through Defendant Giacomazza, emailed Chris Kittler and specifically touted Pantaenius's offering of "worldwide navigation limits."  In the email, Pantaenius and Giacomazza also advised Chris Kittler that a "significant benefit with the Pantaenius America Yacht Policy [was its] ability to service insurance needs throughout the world."

17.     In the same May 7, 2015 email, Pantaenius also provided a premium estimate quotation.  The quote identified a "Cruising Area" but did not disclose or explain the significance of the "Cruising Area" or that the scope of coverage in the quote would be somehow limited as a result.

18.     The quote listed a Montana address for Galilea, LLC.

19.     The Kittlers communicated by phone and email with Defendant Giacomazza, about purchasing the Policy.  The Kittlers advised her, and Panteanius thus well knew, that Galilea was at that very instant sailing in the Caribbean.  Indeed, both Chris and Taunia Kittler, in separate phone calls, told Ms. Giacomazza where Galilea was, and Taunia Kittler explained to her that completing and submitting a hard copy of the insurance application would require them to stop in Puerto Rico to buy a printer/scanner because they were sailing Galilea toward the Panama Canal and ultimately the San Diego area.

20.     In the course of these communications, neither Pantaenius or

Giacomazza advised Chris or Taunia Kittler that there would be no insurance coverage for Galilea until it neared or reached San Diego.

21.    On May 12, 2015, after Taunia Kittler purchased the printer/scanner in Puerto Rico and the application was completed, she emailed the application to Giacomazza at Pantaenius. The application listed a Montana address for Galilea, LLC.

22.    On May 13, 2015, at 12:25 p.m., Pantaenius, acting through Defendant Giacomazza, emailed the Kittlers a yacht insurance proposal and advised the Kittlers that "the advantages of the Pantaenius America Yacht Policy" included the availability of "[w]orldwide navigation limits."

23.    Two minutes later, at 12:27 p.m., Pantaenius, acting through Giacomazza, emailed the Kittlers an insurance binder and thanked Chris Kittler "for the opportunity to provide insurance coverage for [the Galilea]."

24.    The binder stated that insurance coverage for the Galilea commenced on May 12, 2015 at 12:01 a.m. EST, as the Kittlers had requested on the application.  The Insurer Defendants promised to provide both property and liability coverages.  Under the binder, the total agreed fixed value of Galilea was $1,566,600.  The binder referenced a "Cruising Area" but again did not explain its purported significance or state that the scope of coverage for Galilea would be somehow limited as a result.

25.     The binder also listed a Montana address for Galilea, LLC.

26.     The Kittlers relied on all Defendants' promises and representations that Galilea was covered as of May 12, 2015.  Among other things, the Kittlers' reliance included refraining from purchasing other insurance to protect the Galilea during its voyage to San Diego.

27.     On May 14, 2015, Pantaenius sent to the Kittlers a 3-page declaration sheet, an insurance policy form, a "Confirmation of Cover" document, and an invoice.  The enclosed letter was addressed to Galilea, LLC at a Montana address.

28.     On May 19, 2015, the Kittlers arranged for and paid to Pantaenius a $7,779.30 in premium for one year of coverage for the Galilea.

29.     The insurance policy forms sent by Pantaenius and Giacomazza to the Kittlers define the "insured" as "the named insured on the declaration sheets and 'co-insured persons.'" "Co-insured persons" is defined to include "the beneficial owner of the vessel (if not the named insured)."

30.     Plaintiff Taunia Kittler was a beneficial owner of the Galilea.

31.     On June 24, 2015, Galilea was grounded in an accident off the coast of Panama.  Chris Kittler and his son had returned to the United States for work and Galilea was continuing on to San Diego.  Taunia Kittler, the Kittlers' 11-year-old daughter, Taunia Kittler's father, and a captain were aboard at the time of the accident.

32.     The accident was dangerous and horrifying – the yacht flooded and those aboard required emergency rescue by local authorities.  Chris Kittler was notified and awoken by a call from the United States Coast Guard in the middle of the night.

33.     The accident badly damaged the Galilea.  Both hulls were holed and the structural framing of the hulls was damaged and displaced.  The rudders, main engines, propellers, and propeller shafts were all damaged.  The interior of the Galilea was flooded, compromising the interior and electrical system.  The accident also caused rigging and mast damage, among other things.

34.     The vessel was a complete loss, with total repair estimates exceeding $1.6 million.

35.     That same morning of June 24, 2015, Chris Kittler notified Pantaenius of the accident and made a claim for coverage, including a request for immediate assistance with salvage efforts.

36.     Even though Pantaenius's advertised commitment is "always at your side" and even though Pantaenius holds itself out as providing 24-hour-a-day availability "to efficiently and competently assist you with an emergency yacht claim," within hours of receiving notification of the accident and insurance claim, Pantaenius sent an email stating that the Kittlers were "obligated to deal directly with any salvage company and coordinate efforts to salvage" the Galilea.

37.     Pantaenius denied any responsibility on behalf of the Insurers and advised that neither it nor the Insurers would provide any insurance coverage or assistance to the Kittler family in the salvage efforts or otherwise.

38.     The sole basis for the denial of coverage is a "Navigational Limits" provision in the insurance policy form at Section A2(d), purporting to limit coverage, absent certain exceptions, to when the vessel is within the "Cruising Area" identified by coordinates on the third page of the declaration sheet. Defendants claim that because the grounding took place outside of the coordinates defining the "Cruising Area" there is no coverage and they have no responsibilities in connection with the loss of the Galilea and the accident.  Incredibly, Defendants now deny any knowledge that the Kittlers were sailing in the Caribbean, or of Galilea's whereabouts, at the time they promised to provide insurance coverage for the Galilea.

39.     Defendants do not claim that the Kittlers misrepresented Galilea's location at any time, nor is there any conceivable reason that the Kittlers would do so.  The Kittlers went to great lengths to obtain insurance coverage while they were in the middle of a significant sea voyage.  They believed, in reliance on their communications with Pantaenius – the "leading yacht insurance provider worldwide" according to its website – and Giacomazza, a licensed insurance broker – that they had purchased insurance that provided coverage the day they

submitted the application, for their then-present circumstances – sailing in the Caribbean on the insured vessel toward the Panama Canal and ultimately San Diego.

40.     Notably, the Pantaenius application form did not ask where the vessel was then located.  The only place on the application to provide information about the vessel's location at any time is one seeking the vessel's location during "Hurricane Season," next to which was accurately written "San Diego, California," where the Kittlers were taking the Galilea.  Under "Contact Details of the Yacht," only a cell phone number and email address were listed.  A Montana address for Galilea, LLC was provided.

41.     In short, despite taking the $7,779.30 premium on May 19, 2015, with a promise to insure and provide coverage for Galilea on the May 12, 2015 coverage commencement date, and despite Pantaenius's website's representation that it will "efficiently and competently assist you with an emergency yacht insurance claim," Defendants responded to the Kittlers' crisis by telling them, within hours of being notified of the emergency, that the insurance coverage promised and paid for just over a month before was of absolutely no value to them and that they were on their own to deal with the traumatic accident off the coast of Panama.

42.     Pantaenius and the Insurer Defendants denied their coverage

responsibilities to Plaintiffs without reasonable investigation.

43.     Pantaenius and the Insurer Defendants denied their coverage

responsibilities to Plaintiffs without reasonable basis.

44.     Plaintiffs, pleading in the alternative, as applicable, assert the

following causes of action against the Insurers.

## COUNT I
### (Plaintiffs Against Broker Defendants – Breach of Contract to Procure Insurance)

45.     Plaintiffs incorporate and reassert the statements and allegations in all

preceding paragraphs as if fully set forth herein.

46.     Plaintiffs requested that the Broker Defendants assist in acquiring

appropriate insurance coverage for the Galilea.

47.     Plaintiffs reasonably relied on representations by the Broker

Defendants that they were highly skilled in the area of yacht insurance.

48.     The Broker Defendants agreed to assist Plaintiffs in acquiring

appropriate insurance coverage for the Galilea.

49.     The Broker Defendants could have selected and procured appropriate

coverage for the Galilea.

50.     The Broker Defendants failed to select or procure for Plaintiffs an

appropriate insurance policy, instead selecting for and selling to them a policy

which the Insurer Defendants now allege did not provide coverage for the Galilea

in its geographic location at the time the coverage began.

51.     Plaintiffs have suffered damage as a result of the Broker Defendants'
breaches of their agreement to procure appropriate insurance for the Galilea.

## COUNT II
### (Plaintiffs Against Broker Defendants – Breach of Fiduciary Duty)

52.     Plaintiffs incorporate and reassert the statements and allegations in all
preceding paragraphs as if fully set forth herein.

53.     The Broker Defendants owed Plaintiffs a common-law fiduciary duty
arising out of their relationship with Plaintiffs.

54.     The Broker Defendants' misconduct described above breached that
common-law fiduciary duty and is actionable to the extent it is not exclusively
actionable under Montana's Unfair Trade Practices Act.

55.     Plaintiffs have suffered and will suffer damages in excess of
$1,566,500 as a result of the Broker Defendants' breaches of their common-law
fiduciary duty.

56.     The Broker Defendants' breaches of their common-law breach of
fiduciary duty warrants an award of punitive damages against them.  The Broker
Defendants had knowledge of facts, or intentionally disregarded facts, that created
a high probability of injury to Plaintiffs, and have deliberately acted with
indifference to, or in conscious or intentional disregard of, the high probability of
injury to Plaintiffs.

## COUNT III
### (Plaintiffs Against Broker Defendants – Negligence)

57.     Plaintiffs incorporate and reassert the statements and allegations in all preceding paragraphs as if fully set forth herein.

58.     The Broker Defendants owed Plaintiffs a duty of reasonable care, diligence and good judgment in selling to Plaintiffs an insurance policy that was appropriate for Plaintiffs' requests and requirements.

59.     The Broker Defendants breached their duty by failing to exercise reasonable car, diligence and good judgment and instead negligently sold to Plaintiffs an insurance policy that was not appropriate for Plaintiffs' requests and requirements.

60.     The Broker Defendants' negligence caused reasonably foreseeable harm to Plaintiffs.

61.     Plaintiffs have suffered damages as a result of the Broker Defendants' negligence.

## COUNT IV
### (Plaintiffs Against Broker Defendants - Promissory Estoppel)

62.     Plaintiffs incorporate and reassert the statements and allegations in all preceding paragraphs as if fully set forth herein.

63.     The Broker Defendants promised to procure insurance that would insure and provide coverage for the Galilea effective May 12, 2015.

64.     Plaintiffs relied on the Broker Defendants' promises and representations of coverage.

65.     Plaintiff's reliance was both reasonable and foreseeable.

66.     Plaintiffs were injured and have suffered and will suffer damages in excess of $1,566,500 as a result of their reliance.

## COUNT V
### (Plaintiffs Against Broker Defendants - Equitable Estoppel)

67.     Plaintiffs incorporate and reassert the statements and allegations in all preceding paragraphs as if fully set forth herein.

68.     The Broker Defendants' conduct, acts, language, and silence amounted to concealment of the fact that – according to the Insurer Defendants – the Galilea was not covered based on its location when the Broker Defendants promised to procure coverage that would insure and cover Galilea effective May 12, 2015.

69.     Plaintiffs reasonably believed that the Galilea was insured and covered effective May 12, 2015, and did not know the Insurers' position that Galilea was not covered.

70.     The Broker Defendants' conduct was undertaken, and their representations were made, with the intention, or at least the expectation, that Plaintiffs would rely on them.

71.     Plaintiffs did rely on the Insurers' conduct and representations to its

detriment.

72.     As a result of their reliance, Plaintiffs have suffered and will suffer damages in excess of $1,566,500.

73.     Relief should be granted here, where, in view of all of the circumstances, to deny it would permit Plaintiffs to suffer a gross wrong at the hands of the Broker Defendants.

## COUNT VI
### (Plaintiffs Against Broker Defendants - Negligent Misrepresentation)

74.     Plaintiffs incorporate and reassert the statements and allegations in all preceding paragraphs as if fully set forth herein.

75.     The Broker Defendants represented that as of May 12, 2015, the Galilea was insured and covered.  These representations included but were not limited to the Broker Defendants' written representations to the Kittlers on May 13, 2015 that Galilea was insured effective May 12, 2015, and that Plaintiffs had insurance coverage for the Galilea.

76.     The Insurer Defendants now maintain that this representation was untrue, and contend that the Galilea was not covered as of May 12, 2015 because of its then-current location, which the Broker Defendants knew or should have known before they represented that the Galilea was insured and covered.

77.     If the Insurer Defendants' position that there is no coverage for the Galilea under the parties' contract is correct, the Broker Defendants made the

representation that the Galilea was insured and covered effective May 12, 2015 without reasonable basis.

78.    The Broker Defendants' representations that Galilea was insured and covered as of May 12, 2015 were made with the intent to induce Galilea, LLC to rely on the representations and so that the Broker Defendants could obtain insurance premiums from Plaintiff.

79.    Plaintiffs were unaware that the Broker Defendants' representations of coverage were untrue.  Plaintiffs justifiably relied on said representations and did so to their extraordinary detriment, as they paid for insurance coverage intending and expecting to have immediate coverage for Galilea while it continued its planned voyage.

80.    To the extent that policy does not provide coverage for the subject occurrence and loss, including by operation of the Navigational Limits provision in the policy form document, the Broker Defendants' representations to Plaintiffs were careless and incorrect, and constitute actionable misrepresentations.

81.    As a result of such misrepresentations, Plaintiffs have suffered and will suffer damages in excess of $1,566,500.

## COUNT VII
### (Plaintiffs Against Broker Defendants - Constructive Fraud)

82.    Plaintiffs incorporate and reassert the statements and allegations in all preceding paragraphs as if fully set forth herein.

83.     As insurance agents and brokers, the Broker Defendants stood in a special relationship to Plaintiffs, including a fiduciary relationship.  That special relationship obliged the Insurers to be truthful in their representations to Plaintiffs.

84.     The Broker Defendants breached their obligations through the communications and representations described above, including but not limited to communicating that the Galilea was covered by insurance as of May 12, 2015.

85.     Because of the Broker Defendants' breach of their obligations, they misled Plaintiffs and gained an advantage to the prejudice of Plaintiffs.

86.     Plaintiffs have suffered and will suffer damages in excess of $1,566,500 as a direct and proximate result of the Insurers' constructive fraud.

87.     The Broker Defendants' constructive fraud warrants an award of punitive damages against the Insurers.  The Broker Defendants had knowledge of facts, or intentionally disregarded facts, that created a high probability of injury to Plaintiffs, and have deliberately acted with indifference to, or in conscious or intentional disregard of, the high probability of injury to Plaintiffs.

## COUNT VIII
## (Taunia Kittler Against Insurer Defendants – Declaratory Relief)

88.     Taunia Kittler incorporates and reasserts the statements and allegations in all preceding paragraphs as if fully set forth herein.

89.     Under 28 U.S.C. § 2201 and Mont. Code Ann. § 27-8-201, an actual and justiciable controversy exists between Taunia Kittler and the Insurer

Defendants concerning whether the Insurance Defendants have a responsibility to provide insurance coverage for the loss of the Galilea and the subject occurrence, including whether the "Navigational Limits" provision at Section A2(d) of the policy form document precludes such coverage.

90.    Taunia Kittler seeks a declaration that the Insurer Defendants are responsible to provide coverage for the loss of Galilea and the subject occurrence, and that Taunia Kittler is entitled to all of her rights, and all amounts promised by and due from the Insurer Defendants, without application of the Navigational Limits provision in the policy form document on which the Insurer Defendants rely.

## COUNT IX
### (Taunia Kittler Against Insurer Defendants - Breach of Contract)

91.    Taunia Kittler incorporates and reasserts the statements and allegations in all preceding paragraphs as if fully set forth herein.

92.    The Insurer Defendants entered into a contract by which the Insurer Defendants agreed, among other things, to insure the sailing vessel Galilea against loss, and defend and indemnify Taunia Kittler and other "Insureds" from liability claims.

93.    The Galilea's grounding off the cost of Panama, and all resulting damage and any liability claims against Taunia Kittler, constitute covered losses and occurrences under the parties' contract.

18

94.     The Insurer Defendants have failed and refused to pay amounts due under the parties' contract for the damage to Galilea and other covered amounts arising out of the subject occurrence, and denied any obligation to defend and indemnify Taunia Kittler from any potential liability claims related to the occurrence and loss.

95.     The Insurers' failure, refusal, and repudiation of any obligation to confirm, accept, and provide coverage under the parties' contract constitutes a breach thereof.

96.     As a result of the Insurer Defendants' breach of contract, Taunia Kittler has suffered and will suffer damages in excess of $1,566,500.

## COUNT X
## (Taunia Kittler Against Insurer Defendants - Promissory Estoppel)

97.     Taunia Kittler incorporates and reasserts the statements and allegations in all preceding paragraphs as if fully set forth herein.

98.     The Insurer Defendants promised to insure and provide coverage for the Galilea effective May 12, 2015.

99.     Taunia Kittler relied on the Insurer Defendants' promise and representation of coverage.

100.    Taunia Kittler's reliance was both reasonable and foreseeable.

101.    Taunia Kittler was injured, and has suffered and will suffer damages in excess of $1,566,500 as a result of her reliance.

## COUNT XI
### (Taunia Kittler Against Insurer Defendants - Equitable Estoppel)

102.   Taunia Kittler incorporates and reasserts the statements and allegations in all preceding paragraphs as if fully set forth herein.

103.   The Insurer Defendants' conduct, acts, language, and silence amounted to concealment of the Insurer Defendants' position that the Galilea was not covered based on its location when the Insurer Defendants promised to insure and cover Galilea effective May 12, 2015.

104.   Taunia Kittler reasonably believed that the Galilea was insured and covered effective May 12, 2015, and did not know the Insurer Defendants' position that Galilea was not covered.

105.   The Insurer Defendants' conduct was undertaken, and their representations were made, with the intention, or at least the expectation, that Taunia Kittler would rely on them.

106.   Taunia Kittler did rely on the Insurers' conduct and representations to her detriment.

107.   As a result of her reliance, Taunia Kittler has suffered and will suffer damages in excess of $1,566,500.

108.   Relief should be granted here, where, in view of all of the circumstances, to deny it would permit Taunia Kittler to suffer a gross wrong at the hands of the Insurer Defendants.

## COUNT XII
## (Taunia Kittler Against Insurer Defendants - Breach of Fiduciary Duty)

109.   Taunia Kittler incorporates and reasserts the statements and allegations in all preceding paragraphs as if fully set forth herein.

110.   The Insurer Defendants owed Taunia Kittler a common-law fiduciary duty arising out of their relationship with Taunia Kittler.

111.   The Insurer Defendants' misconduct described above breached that common-law fiduciary duty and is actionable to the extent it is not exclusively actionable under Montana's Unfair Trade Practices Act.

112.   Taunia Kittler has suffered and will suffer damages in excess of $1,566,500 as a result of the Insurer Defendants' breaches of their common-law fiduciary duty.

113.   The Insurer Defendants' breach of their common-law breach of fiduciary duty warrants an award of punitive damages against the Insurers.  The Insurer Defendants had knowledge of facts, or intentionally disregarded facts, that created a high probability of injury to Taunia Kittler, and have deliberately acted with indifference to, or in conscious or intentional disregard of, the high probability of injury to Taunia Kittler.

## COUNT XIII
## (Taunia Kittler Against Insurer Defendants - Negligent Misrepresentation)

114.   Taunia Kittler incorporates and reasserts the statements and

allegations in all preceding paragraphs as if fully set forth herein.

115.   The Insurer Defendants represented that as of May 12, 2015, the Galilea was insured and covered.  These representations included but were not limited to the Insurer Defendants' written representations to the Kittlers on May 13, 2015 that Galilea was insured effective May 12, 2015, and that Plaintiffs had insurance coverage for the Galilea.

116.   The Insurer Defendants now maintain that their own representation was untrue, and contend that the Galilea was not covered as of May 12, 2015 because of its then-current location, which the Insurer Defendants knew or should have known before they represented that the Galilea was insured and covered.

117.   If the Insurer Defendants' position that there is no coverage for the Galilea under the policy is correct, the Insurer Defendants made the representation that the Galilea was insured and covered effective May 12, 2015 without reasonable basis.

118.   The Insurer Defendants' representations that Galilea was insured and covered as of May 12, 2015 were made with the intent to induce Taunia Kittler to rely on the representations and so that the Insurers could obtain insurance premiums from Plaintiffs.

119.   Taunia Kittler was unaware that the Insurer Defendants' representations of coverage were untrue.  Taunia Kittler justifiably relied on said

representations and did so to her extraordinary detriment, as she caused Galilea LLC to pay for insurance coverage intending and expecting to have immediate coverage for the Galilea while it continued its planned voyage.

120.   To the extent that the policy does not provide coverage for the subject occurrence and loss, including by operation of the Navigational Limits provision in the policy form document, the Insurer Defendants' representations to Taunia Kittler were careless and incorrect, and constitute actionable misrepresentations.

121.   As a result of such misrepresentations, Taunia Kittler has suffered and will suffer damages in excess of $1,566,500.

## COUNT XIV
### (Taunia Kittler Against Insurer Defendants - Constructive Fraud)

122.   Taunia Kittler incorporates and reasserts the statements and allegations in all preceding paragraphs as if fully set forth herein.

123.   As Taunia Kittler's insurers, the Insurer Defendants stood in a special relationship to Galilea, LLC, including a fiduciary relationship.  That special relationship obliged the Insurers to be truthful in their representations to Taunia Kittler.

124.   The Insurer Defendants breached their obligations through the communications and representations described above, including but not limited to communicating that the Galilea was covered as of May 12, 2015.

125.   Because of the Insurer Defendants' breach of their obligations, the

Insurer Defendants misled Taunia Kittler and gained an advantage to the prejudice of Taunia Kittler.

126.   Taunia Kittler has suffered and will suffer damages in excess of $1,566,500 as a direct and proximate result of the Insurer Defendants' constructive fraud.

127.   The Insurer Defendants' constructive fraud warrants an award of punitive damages against the Insurer Defendants.  The Insurer Defendants had knowledge of facts, or intentionally disregarded facts, that created a high probability of injury to Taunia Kittler, and have deliberately acted with indifference to, or in conscious or intentional disregard of, the high probability of injury to Taunia Kittler.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury to the fullest extent permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request relief as follows:

(1)     Declaratory judgment, declaring the parties' rights and responsibilities under the Policy or otherwise;

(2)     All damages allowed by law, including compensatory damages and consequential damages flowing from the Insurers' breach of their duties as set forth above;

(3)      All damages allowed by law, including exemplary and punitive

damages to the maximum extent allowed by law;

(4)      All attorneys' fees, costs, and expenses incurred by Plaintiffs  in

connection with this matter;

(5)      All interest on the above-described amounts allowed by law; and

(6)      Such other and further relief as deemed just, appropriate, necessary or

proper.

**DATED:  June 22, 2018**

By:  /s/ Mark E. Anderson
      Mark E. Anderson, Esq.

      -with-

      /s/ Joseph J. Gleason
      Joseph J. Gleason, Esq. (*pro hac vice*
      motion forthcoming)

      ***Attorneys for Plaintiffs***