IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| GALILEA, LLC and TAUNIA KITTLER,<br><br>                    Plaintiffs,<br><br>vs.<br><br>PANTAENIUS AMERICAN LIMITED, ANDREA M. GIACOMAZZA, AGCS MARINE INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, and TORUS INSURANCE COMPANY,<br><br>                    Defendants. | CV 18-131-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE** |

Plaintiffs Galilea, LLC ("Galilea") and Taunia Kittler ("Kittler") bring this action against Defendants Pantaenius America Limited ("Pantaenius"), Andrea M. Giacomazza,[1] and AGCS Marine Insurance Company, Liberty Mutual Insurance Company, and Torus Insurance Company (the "Insurer Defendants"). In the complaint, Galilea and Kittler assert seven counts against Pantaenius relating to whether it properly procured insurance as requested by Plaintiffs (Counts I-VII), and Kittler brings seven counts against the Insurer Defendants relating to the denial

---

[1] Andrea M. Giacomazza has not been served. (Doc. 3 at 10.)

1

of insurance coverage for loss of the sailing yacht *Galilea* (Counts VIII-XIV). (Doc. 1.)

Presently before the Court are the Insurer Defendants' Motion to Compel Arbitration, Motion to Dismiss and/or Motion to Stay (Doc. 2) and Panaenius' Motion to Compel Arbitration, Motion to Dismiss and/or Motion to Stay. (Doc. 6.) The motions are fully briefed and ripe for the Court's review. (Docs. 20, 21, 24, 25.)

## I. BACKGROUND

Galilea, LLC is a Nevada limited liability company that was formed by Chris and Taunia Kittler for the purpose of owning their 60-foot sailing yacht, the *Galilea*. (Doc. 1 at ¶ 1.) The Kittlers are Montana residents and are the sole members of Galilea, LLC. (*Id.*)

The Insurer Defendants are the insurance companies who provided the coverage under the insurance policy at issue in this case. (Doc. 7-4.) Pantaenius specializes in obtaining and administering yacht insurance policies, and acts as an agent for the insurance underwriters. (Doc. 7-4; *Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1054 (9th Cir. 2018).)

On May 12, 2015, Taunia Kittler emailed an application for yacht insurance to Pantaenius. (*Id.* at ¶ 21.) The application listed Galilea, LLC as the insured. (Doc. 7-11.)

The insurance application contained the following arbitration provision:

> Any dispute arising out of or relating to the relationship between Pantaenius America Ltd and/or our participating underwriters and the insured shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The dispute shall be submitted to one arbitrator. This relationship shall be governed by the laws of the state of New York. The place of arbitration shall be New York, New York.

(Doc. 7-11.)

On May 13, 2015, Pantaenius issued an insurance binder providing preliminary coverage, and the formal insurance policy was issued a day later. (Doc. 1 at ¶¶ 22-24, 27; Docs. 7-4; 71-12.) The policy provided:

> **A11: JURISDICTION AND CHOICE OF LAW**
> This insurance policy shall be governed by and construed in accordance with well established and entrenched principles and precedents of substantive United States Federal Maritime Law, but where no such established and entrenched principles and precedents exist, the policy shall be governed and construed in accordance with the substantive laws of the State of New York, without giving effect to its conflict of laws principles, *and the parties hereto agree that any and all disputes arising under this policy shall be resolved exclusively by binding arbitration to take place within New York County, in the State of New York, and to be conducted pursuant to the Rules of the American Arbitration Association.*

(Doc. 7-4 (emphasis added).)

Both the insurance application and the policy set forth the covered "Cruising Area" as "Inland waters, bays and coastal waters east to 50° West Longitude and west to 135° West Longitude, and north to 52° North Latitude, and south to 30.5°

3

North Latitude." (Docs. 7-4; 7-11.) The policy further stated that "coverage is effective only when the insured vessel(s) are within the 'cruising area' specified on the declaration sheets." (Doc. 7-4.)

On June 24, 2015, the yacht ran ashore off the coast of Panama, and was deemed a complete loss. (*Id.* at ¶¶ 31, 33-34.) Chris Kittler submitted a claim for insurance coverage the same day. (*Id.* at ¶ 35.) The Insurer Defendants denied coverage on the basis that the accident occurred outside of the cruising area identified in the policy. (*Id.* at ¶ 38.)

After Galilea requested the Insurer Defendants to reconsider the coverage denial, the Insurer Defendants initiated arbitration proceedings in New York. In response, Galilea filed an action in this Court against the Insurer Defendants. *See Galilea v. AGCS Marine Ins. Co.*, Case No. 15-cv-84-SPW, Docket No. 1 (D. Mont. August 28, 2015). Galilea asserted claims for declaratory relief, breach of contract, contract reformation, promissory estoppel, equitable estoppel, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, violation of Montana Unfair Trade Practices Act, negligent misrepresentation, constructive fraud, tortious interference with contract, and tortious interference with prospective economic advantage. *Id.*

U.S. District Judge Susan P. Watters determined the choice of law and arbitration provision in the policy was valid and enforceable, and compelled arbitration as to the first two counts in the complaint, but denied it as to the others. *Galilea, LLC v. AGCS Marine Ins. Co.*, 2016 WL 754221 (D. Mont. Feb. 24, 2016); *Galilea, LLC v. AGCS Marine Ins. Co.*, 2016 WL 1328920 (D. Mont. April 5, 2016). The Ninth Circuit affirmed, but determined the Insurer Defendants' motion to compel arbitration should have been granted as to all counts. *Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052 (9th Cir. 2018). On remand, Judge Watters granted the Insurer Defendants' motion to compel arbitration in its entirety and dismissed the case. *Galilea*, Case No. 15-cv-84-SPW, Docket No. 50 (D. Mont. Feb. 9, 2018).

Taunia Kittler now brings this lawsuit in her individual capacity against the Insurer Defendants. Kittler's claims against the Insurer Defendants are substantially identical to the claims Galilea asserted against the Insurer Defendants in the prior action. (*Compare* Doc. 1 at ¶¶ 88-127 and *Galilea*, Case No. 15-cv-84-SPW, Docket No. 1 at ¶¶ 49-58; 63-74; 81-85; 90-103.) Kittler and Galilea also bring claims against Pantaenius for the first time. (Doc. 1.)

The Insurer Defendants argue Kittler should be compelled to arbitrate under the terms of the policy's arbitration clause. Pantaenius also argues Galilea and Kittler should be compelled to arbitrate under the arbitration provision in the

insurance application. Alternatively, both the Insurer Defendants and Pantaenius argue Plaintiffs' claims should be dismissed, or this case should be stayed pending the outcome of the ongoing arbitration involving Galilea LLC and the Insurer Defendants.

## II. DISCUSSION

The Insurer Defendants and Pantaenius argue that, although Kittler is not a signatory to the policy or insurance application, she is nevertheless bound by the arbitration provisions in those contracts under a theory of equitable estoppel. Kittler counters that she never agreed to arbitration with the Insurer Defendants or Pantaenius, and thus, she cannot be compelled to arbitrate.

### A. The Federal Arbitration Act

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements in contracts involving interstate commerce. The FAA provides that upon petition of a party, a court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement," if the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4.

The FAA declares a national policy favoring arbitration. *Southland Corp. v. Keating*, 465 U.S. 1, 2 (1984); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). It places arbitration agreements on an equal footing with other

contracts, and requires courts to enforce them according to their terms. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010).

When considering whether to compel arbitration, courts are "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If these two requirements are met, judicial proceedings must be stayed "until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Chiron Corp.*, 207 F.3d at 1131 (citing *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983)).

### B. Whether Kittler Can be Compelled to Arbitrate Her Claims Against the Insurer Defendants

The Insurer Defendants move to compel Kittler to arbitrate her claims under the policy's arbitration clause. Based on the Ninth Circuit's opinion in the prior litigation, there is no dispute that the choice of law and arbitration provision in the policy is valid and enforceable. *Galilea, LLC*, 879 F.3d at 1062. The question, then, is whether Kittler's claims against the Insurer Defendants are subject to the provision.

"Arbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit." *AT&T Tech., Inc. v. Commc'ns*

7

*Workers of Am.*, 475 U.S. 643, 648 (1986). Generally, only signatories to an arbitration agreement are required to submit to arbitration. *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) (stating "the FAA does not require parties to arbitrate when they have not agreed to do so . . . ."). Nevertheless, "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). These principles include: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Id. See also Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1063-64 (2d Cir. 1993); *Thomson-CSF, S.A. v. Am. Arbitration Assoc.*, 64 F.3d 773, 776 (2d. Cir. 1995). As noted, the Insurer Defendants contend Kittler is bound by estoppel.

In the arbitration context, there are two general theories of equitable estoppel. *Comer*, 436 F.3d at 1101; *Thomson-CSF, S.A.*, 64 F.3d at 778-79. Under the first theory, often referred to as direct benefits estoppel, courts have bound non-signatories to arbitration clauses where the non-signatory knowingly exploits an agreement containing an arbitration provision. *Comer*, 436 F.3d at 1101; *Thomson-CSF, S.A.*, 64 F.3d at 778-79. Under the second theory, signatories have been required to arbitrate claims brought by non-signatories at the request of the non-signatory because of the close relationship between the parties involved.

*Comer*, 436 F.3d at 1101; *Thomson-CSF, S.A.*, 64 F.3d at 779. Here, because the Insured Defendants are invoking estoppel against a non-signatory, the direct benefits estoppel line of cases is instructive.

Under the theory of direct benefits estoppel, a non-signatory "is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause." *Am. Bureau of Shipping v. Tencara Shipyard*, 170 F.3d 349, 353 (2d Cir. 1999). Direct benefits estoppel prevents a non-signatory "from embracing a contract, and then turning its back on the portions of the contract, such as an arbitration clause, that it finds distasteful." *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3rd Cir. 2001). A direct benefit is one that flows "directly from the agreement." *MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001). In contrast, "the benefit derived from an agreement is indirect where the nonsignatory exploits the contractual relation of parties to the agreement, but does not exploit (and thereby assume) the agreement itself." *Id.* at 61. *See also McKenna Long & Aldridge, LLP v. Ironshore Specialty Ins. Co.*, 2015 WL 144190, *9 (S.D.N.Y. Jan. 12, 2015) ("A benefit is direct if it flows directly from the agreement, as opposed to merely being a consequence of the contractual relations of the parties to the agreement.").

Direct benefits estoppel is widely recognized and applies in situations where

9

a non-signatory sues to enforce provisions of a contract that contains an arbitration clause. *See e.g., World Omni Fin. Corp. v. Ace Capital Re Inc.*, 64 Fed.Appx. 809, 812-13 (2d Cir. 2003) (holding a non-signatory to a reinsurance policy who alleged a breach of the reinsurance policy and demanded compensatory damages was estopped from denying its duty to arbitrate under the policy's arbitration provision); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417-18 (4th Cir. 2000) (finding that where a non-signatory plaintiff's "entire case hinges on its asserted rights under [a] contract; it cannot seek to enforce those contractual rights and avoid the contract's requirement that 'any dispute arising out of' the contract be arbitrated."); *Bevere v. Oppenheimer & Co.*, 862 F.Supp.1243, 1249 (D. N.J. 1994) ("[I]ndividuals who are not direct signatories to an arbitration agreement may nevertheless be bound by it when their claims arise from the very contract that contains the arbitration clause."). As the Fourth Circuit explained, the doctrine of direct benefits estoppel "recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him. 'To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act.'" *Int'l Paper Co.*, 206

F.3d at 418.

Additionally, direct benefits estoppel has been applied where the non-signatory received a tangible benefit from the contract. *See e.g., Deloitte Noraudit*, 9 F.3d at 1064 (holding a non-signatory who knowingly accepted the benefits of an agreement was estopped from arguing it was not bound by the arbitration provision in the agreement); *Tencara Shipyard*, 170 F.3d at 353 (holding yacht owners were bound to arbitration under an agreement they did not sign because they received direct benefits from the agreement including lower insurance rates and the ability to sail under the French flag).

Here, Kittler is seeking direct benefits under the insurance policy. (Doc. 1 at ¶¶ 88-127.) She claims the Insurer Defendants breached the contract, and demands damages of $1,566,500, which is the Total Agreed Fixed Value of the Hull Coverage under the policy. (*Id.* at ¶ 96; Doc. 7-4.) Kittler also claims she is entitled to a declaration of coverage under the Policy. (*Id.* at ¶ 90.) No clearer indication that she seeks a "direct benefit" from the contract could be made. Accordingly, the Court finds Kittler should be estopped from denying a duty to arbitrate under the policy.

Kittler cites *AGCS Marine Ins. Co. v. Hymel & Assoc., LLC*, 2017 WL 2729093 (S.D.N.Y. June 22, 2017) to support her argument she cannot be compelled to arbitrate her claims against the Insurer Defendants. *Hymel* is

11

factually similar to this action. It involved the same Insurer Defendants, and dealt with a question of whether a non-signatory to a yacht policy could be compelled to arbitrate. *Id.* at *1. But *Hymel* is distinguishable in one key respect – the court did not consider or discuss estoppel at all.

In *Hymel*, the vessel in question was owned by an LLC, like the vessel here. *Id.* at * 1. There, the vessel's beneficial owner signed the insurance application upon which the policy was issued. *Id.* at *4. The beneficial owner was also listed as the named insured. *Id.* at *5. The Insurer Defendants moved to compel both the beneficial owner and the LLC to arbitrate a dispute over coverage. The court determined the LLC could not be compelled to arbitrate under the policy's arbitration clause because it had not signed the application. *Id.* at *6. The Insurer Defendants argued the LLC should be bound under an agency theory, but the court disagreed. *Id.* at 4. Significantly, the Insurer Defendants in *Hymel* did not argue, as they do here, that the non-signatory was bound by estoppel. As such, although *Hymel* appears to support Kittler's argument at first blush, upon closer examination it is inapposite to the case at hand. The court never considered the application of direct benefits estoppel.

The Court further finds Kittler's claims fall within the scope of the policy's arbitration agreement. The arbitration provision states "any and all disputes arising under this policy" would be resolved by arbitration. (Doc. 7-4.) The arbitration

provision, is therefore, broad enough to reach Kittler's claims. *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017) (holding that even if a party can be bound to an arbitration agreement under theory of equitable estoppel, the dispute must still fall within the scope of the agreement); *Continental U.K. Limited v. Anagel Confidence Compania Naviera, S.A.*, 658 F.Supp. 809, 814 (S.D.N.Y. 1987) (stating nonsignatory cannot be compelled to arbitrate unless the language of the arbitration clause is "broad enough to allow nonsignatories' disputes to be brought within its terms").

Accordingly, the Court finds Kittler should be compelled to arbitrate her claims against the Insurer Defendants.

### C.   Whether Galilea and Kittler Can Be Compelled To Arbitrate Their Claims Against Pantaenius

Pantaenius moves to compel Plaintiffs to arbitrate their claims under the arbitration clause set forth in the insurance application. Plaintiffs argue Pantaenius cannot compel arbitration because the Ninth Circuit held the insurance application was not an enforceable contract.

The Ninth's Circuit's decision is not as broad as Plaintiffs suggest. In the prior litigation, the Insurer Defendants sought to enforce the arbitration provision

in the insurance application.[2] *Galilea*, 879 F.3d at 1056. The Ninth Circuit explained that under applicable New York law, language from the application could only be incorporated into the insurance policy if the application was attached to the policy at the time of delivery. *Id.* at 1057. The court noted that the application was not attached to the policy when it was issued. *Id.* Therefore, the court held the terms of the insurance application were not incorporated into the policy. *Id.* As a result, the insurance application was not a contract the *Insurer Defendants* could enforce. *Id.* The Ninth Circuit's decision did not address whether *Pantaenius* could enforce the terms of the insurance application. Pantaenius was not a party to the prior case. Nothing in the court's opinion suggests that Pantaenius – who was a direct party to the application but not the policy – would be precluded from enforcing the arbitration provision in the application. Therefore, the Court finds Pantaenius may seek to enforce the terms of the insurance application.

    1.    <u>Galilea's Claims Against Pantaenius</u>

The insurance application provides that "any dispute arising out of or relating to the relationship between Pantaenius . . . and the insured shall be settled by arbitration . . ." (Doc. 7-11.) Plaintiffs do not contest that Galilea was named

---

[2] It appears the Insurer Defendants sought to rely on the arbitration provision in the insurance application because its scope was broader than the arbitration provision in the policy. *See Galilea*, 2016 WL 1328920 at *3-4.

as the insured on the application and is a party to the agreement. Galilea is therefore bound by the arbitration provision. Accordingly, Pantaenius' motion to compel arbitration should be granted as to Galilea.

### 2. Kittler's Claims Against Pantaenius

With respect to Kittler's claims, she again asserts that she cannot be compelled to arbitrate because she personally did not agree to arbitration. Since Kittler did not sign the insurance application, Pantaenius must show one of the exceptions to the general rule requiring an express agreement to arbitrate applies. *Comer*, 436 F.3d at 1101. Like the Insurer Defendants, Pantaenius argues Kittler should be bound to arbitration under the doctrine of direct benefits estoppel. But, unlike the Insurer Defendants, Pantaenius cannot point to a direct benefit that Kittler is seeking to enforce under the application. Pantaenius bases its argument on the fact Kittler emailed the insurance application to Pantaenius. (Doc. 7 at 27-28.) The fact Kittler emailed the application, however, is insufficient to show she received or is seeking a direct benefit under the contract.

In its reply, Pantaenius asserts for the first time that Kittler also "seeks to benefit directly from fiduciary duties and other purported obligations" that arose from the insurance application. (Doc. 25 at 11.) Generally, arguments raised for the first time in reply will not be considered. *Rios-Diaz v. Butler*, 2014 WL 12591682, *7 (D. Mont. Apr. 1, 2014); *Eberle v. City of Anaheim*, 901 F.2d 814,

818 (9th Cir. 1990). Nevertheless, even if considered, these purported benefits do not flow directly from the insurance application in the same way that Kittler's claims related to the policy do. For instance, Kittler seeks a declaration that she is entitled to coverage under the policy, and she claims she is entitled to recover the full amount of the Hull Coverage specified in the policy. In contrast, Kittler does not seek to enforce any provision of the insurance application. Further, none of her causes of action against Pantaenius refer to, or rely on, the insurance application. As a result, the Court finds any benefit Kittler is attempting to obtain from the insurance application, is "merely [] a consequence of the contractual relations of the parties to the agreement." *McKenna*, 2015 WL 144190, at *9. Pantaenius has not shown Kittler has received or is seeking a direct benefit from the insurance application that would justify direct benefits estoppel. *Id.*

Accordingly, the Court declines to bind Kittler to the arbitration provision in the insurance application. As a result, Pantaenius' motion to compel arbitration as to Kittler should be denied.

### E. Whether Stay or Dismissal is Appropriate

The FAA provides that courts shall stay actions pending arbitration. 9 U.S.C. § 3. The Ninth Circuit has held, however, that courts have discretion to dismiss an action if all of the plaintiff's claims are subject to arbitration. *Sparling v. Hoffman Construction Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (stating the FAA

"gives a court authority, upon application by one of the parties, to grant a stay pending arbitration, but does not preclude summary judgment when all claims are barred by an arbitration clause").

### 1. Kittler's Claims Against the Insurer Defendants

The Ninth Circuit previously found all of Galilea's claims against the Insurer Defendants were subject to arbitration. *Galilea*, 879 F.3d at 1061-62. Kittler asserts the same claims against the Insurer Defendants in this case. Accordingly, all of Kittler's claims against the Insurer Defendants are subject to arbitration. Therefore, the Court finds dismissal of those claims is appropriate.

### 2. Galilea's Claims Against Pantaenius

The Court has determined Galilea must arbitrate its claims against Pantaenius. Therefore, the Court finds Galilea's claims against Pantaenius should be dismissed.

### 3. Kittler's Claims Against Pantaenius

Pantaenius argues, in the alternative, that if the Court declines to compel Plaintiffs to arbitrate all of their claims, it should either dismiss the remaining claims or stay this action pending arbitration. The Court finds a stay is the most appropriate course of action at this point. Kittler and Galilea's claims against Pantaenius are identical. Therefore, if the Court were to consider Pantaenius's motions to dismiss Kittler's claims at this time, while Galilea's claims proceed

through arbitration, it could result in inconsistent findings on the merits of the parties' claims and defenses.  Accordingly, in the interest of judicial economy and the exercise of the Court's discretion, the Court finds Kittler's claims against Pantaenius should be stayed pending the outcome of the arbitration between Galilea and Pantaenius.

## III.   CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that:

1.   The Insurer Defendants' Motion to Compel Arbitration (Doc. 2) should be **GRANTED**, and Kittler's claims against the Insurer Defendants (Counts VIII-XIV) should be **DISMISSED**.

2.   Pantaenius' Motion to Compel Arbitration (Doc. 6) should be **GRANTED** as to Galilea LLC's claims against Pantaenius, and Galilea LLC's claims against Pantaenius should be **DISMISSED**.

3.   Pantaenius' Motion to Compel Arbitration (Doc. 6) should be **DENIED** as to Taunia Kittler's claims against Pantaenius; and this action **STAYED** pending arbitration between Galilea LLC and Pantaenius in accordance with the arbitration provision in the insurance application.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to

the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 15th day of February, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge