IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| GALILEA, LLC and TAUNIA KITTLER, | CV 18-131-BLG-SPW-TJC |
| Plaintiffs, | **FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE** |
| vs. | |
| PANTAENIUS AMERICAN LIMITED, ANDREA M. GIACOMAZZA, AGCS MARINE INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, and TORUS INSURANCE COMPANY, | |
| Defendants. | |

Plaintiffs Galilea, LLC and Taunia Kittler ("Plaintiffs") bring this action against Defendants Pantaenius America Limited ("Pantaenius"), Andrea M. Giacomazza ("Giacomazza"), and AGCS Marine Insurance Company, Liberty Mutual Insurance Company, and Torus Insurance Company (the "Insurer Defendants").  In the Complaint, Plaintiffs assert seven counts against Pantaenius and Giacomazza relating to whether they properly procured insurance as requested by Plaintiffs (Counts I-VII).[1]  (Doc. 1.)

---

[1] Taunia Kittler also brings claims against the Insurer Defendants relating to the denial of insurance coverage for loss of the sailing yacht *Galilea* (Counts VIII-XIV).

Presently before the Court is Giacomazza's Motion to Dismiss.[2]  (Doc. 34.)

The motion is fully briefed and ripe for the Court's review.  (Docs. 35, 39, 42.)

For the reasons which follow, the Court recommends that Giacomazza's Motion to

Dismiss be **GRANTED**.

## I.    BACKGROUND

Galilea, LLC is a Nevada limited liability company that was formed by

Chris and Taunia Kittler for the purpose of owning a 60-foot sailing yacht, the

*Galilea*.  (Doc. 1 at ¶ 1.)  The Kittlers are Montana residents and are the sole

members of Galilea, LLC.  (*Id.*)

The Insurer Defendants are the insurance companies who provided the

coverage under the insurance policy at issue in this case.  (*Id.* at ¶ 5-7.)  Pantaenius

is an insurance company that specializes in obtaining and administering yacht

insurance policies, and acts as an agent for the insurance underwriters.  (*Id.* at ¶3;

*Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1054 (9th Cir. 2018).)

Giacomazza is employed by Pantaenius.  (*Id.* at ¶ 4.)  Giacomazza is a resident of

---

[2] Giacomazza moved in the alternative to compel arbitration and/or stay the action.
(Doc. 34.)  This case was previously stayed pending arbitration and the outcome of
the Petition to Vacate the Arbitration Award in the Southern District of New York.
(Doc. 43.)  The arbitration has since been completed and the final arbitration award
confirmed.  (Doc. 48.)  Giacomazza's motion is therefore moot with regard to the
request to compel arbitration and/or stay the action.

the state of New York, and works at Pantaenius' office in Harrison, New York. (*Id.*; Doc. 35-1 at ¶¶ 1, 7.)

In May 2015, the Kittlers were sailing the *Galilea* in the Caribbean on a course for the Panama Canal. (*Id.* at ¶ 12.) Their destination was a marina in San Diego, California, which was to be the *Galilea's* home port. (*Id.*) At the time, the Kittlers where evaluating potential new insurers for the yacht. (*Id.* at ¶ 13.) Chris Kittler researched Pantaenius online. (*Id.*)

On May 7, 2015, Chris Kittler completed a basic questionnaire and submitted it to Pantaenius. (*Id.* at ¶ 14.) Giacomazza responded to Chris Kittler by email and provided a premium estimate quote. (*Id.* at ¶¶ 16-17.)

The Kittlers subsequently communicated with Giacomazza by telephone about purchasing a policy. (*Id.* at ¶ 19.) Plaintiffs allege they told Giacomazza they were sailing in the Caribbean at that time, with the destination of San Diego via the Panama Canal, and that submitting a hard copy of the insurance application would require them to stop in Puerto Rico to purchase a printer/scanner. (*Id.*) They allege Giacomazza did not advise them that there would be no insurance coverage until the *Galilea* neared or reached San Diego.

On May 12, 2015, Taunia Kittler emailed an application for yacht insurance to Giacomazza at Pantaenius, after purchasing the printer/scanner in Puerto Rico. (*Id.* at ¶ 21.) The application listed a Montana address for Galilea, LLC. (*Id.*)

3

On May 13, 2015, Pantaenius issued an insurance binder providing preliminary coverage, and the formal insurance policy was issued a day later. (*Id.* at ¶¶ 22-24.) Giacomazza emailed the insurance binder and policy to the Kittlers. (*Id.*)

On May 14, 2015, Pantaenius sent the Kittlers a 3-page declaration sheet, an insurance policy form, a "Confirmation of Cover" document, and an invoice. (*Id.* at ¶ 27.) An enclosed letter was addressed to Galilea, LLC at a Montana address. (*Id.*)

On June 24, 2015, the yacht ran ashore off the coast of Panama, and was deemed a complete loss. (*Id.* at ¶¶ 31, 33-34.) Chris Kittler submitted a claim for insurance coverage the same day. (*Id.* at ¶ 35.) The Insurer Defendants denied coverage on the basis that the accident occurred outside of the cruising area identified in the policy. (*Id.* at ¶ 38.)

After Galilea requested the Insurer Defendants to reconsider the coverage denial, the Insurer Defendants initiated arbitration proceedings in New York. In response, Galilea filed an action in this Court against the Insurer Defendants. *See Galilea v. AGCS Marine Ins. Co.*, Case No. 15-cv-84-SPW, Docket No. 1 (D. Mont. August 28, 2015). The Court granted the Insurer Defendants' motion to compel arbitration and dismissed that case. *Galilea*, Case No. 15-cv-84-SPW, Docket No. 50 (D. Mont. Feb. 9, 2018).

Taunia Kittler now brings this lawsuit in her individual capacity against the Insurer Defendants.  Kittler's claims against the Insurer Defendants are substantially identical to the claims Galilea asserted against the Insurer Defendants in the prior action.  (*Compare* Doc. 1 at ¶¶ 88-127 and *Galilea*, Case No. 15-cv-84-SPW, Docket No. 1 at ¶¶ 49-58; 63-74; 81-85; 90-103.)  Kittler and Galilea also bring claims against Pantaenius and Giacomazza for the first time.  (Doc. 1.)

The Complaint was filed on June 22, 2018.  (Doc. 1.)

On September 21, 2018, Giacomazza was purportedly served with a copy of the Summons and Complaint.  (Doc. 28.)

On March 5, 2019, default was entered against Giacomazza for failing to appear, plead, or otherwise defend the action.  (Doc. 30.)

On March 7, 2019, Giacomazza filed the instant motion, requesting the Court set aside the default and dismiss the action against her on the basis of insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5).  (Doc. 34.)  Alternatively, Giacomazza argues the Court should dismiss the action against her for lack of personal jurisdiction under Rule 12(b)(2).  (*Id.*)

## II.    MOTION TO SET ASIDE DEFAULT

Giacomazza first moves to set aside the default entered against her on March 5, 2019.  "The court may set aside an entry of default for good cause[.]"  Fed. R. Civ. P. 55(c).  Courts consider three factors to determine whether good cause is

present: (1) whether the defendant engaged in culpable conduct that led to the default; (2) whether the defendant has a meritorious defense; or (3) whether the plaintiff will be prejudiced. *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010). All of these factors weigh in favor of setting aside the default in this case.

First, there is no evidence that Giacomazza engaged in any culpable conduct that led to the default. Plaintiffs allege that defense counsel requested multiple extensions of time between July 26, 2018 and August 24, 2018, and repeatedly represented that Giacomazza would answer or respond on specific dates but failed to do so. (Doc. 39 at 3.) But Plaintiffs' counsel was advised in an email of August 28, 2018 that defense counsel did not believe that Giacomazza had been properly served, and that extensions were sought only for defendants who had a response due. As for Giacomazza, it was stated that since "she has not been served, there was and still is no deadline to extend." (Doc. 42-2 at ¶ 17.) Therefore, Plaintiffs have been on notice of contested service issues from the early stages of this case, and were advised that the requested extensions were not made on Giacomazza's behalf.

In addition, Giacomazza has a meritorious defense to this action. As discussed below, this Court does not have personal jurisdiction over Giacomazza, and the action against her in the District of Montana should be dismissed.

Finally, Plaintiffs will not be prejudiced.  Due to a stay previously entered in this action, this case is in its early stages, and no further delay will be occasioned by setting aside the default.  More importantly, however, any judgment entered against Giacomazza in this action would be void.  If Plaintiffs intend to pursue the entry of a default judgment against Giacomazza, this Court would be required to determine whether it has personal jurisdiction over Giacomazza in this action.  See e.g., *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986) ("when entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties."); *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (recognizing that a judgment entered without personal jurisdiction is void, and stating "[t]o avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place."); *Am. Assoc. of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107 (9th Cir. 2000) (unless waived, a defendant can challenge personal jurisdiction even after a default judgment has been entered).  As discussed below, Giacomazza is not subject to personal jurisdiction in this Court, and any judgment entered against her in this action would be void.  Thus, Plaintiffs are not prejudiced by setting aside the

default and addressing the jurisdictional issue at this time, rather than when

Plaintiffs seek the entry of a default judgment.

## III.   MOTION TO DISMISS BASED ON SUFFICIENCY OF SERVICE OF PROCESS

"Before a federal court may exercise personal jurisdiction over a defendant,

the procedural requirement of service of summons must be satisfied." *Omni*

*Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987).  Under Rule

12(b)(5), dismissal is the appropriate remedy for insufficient service of process.

"Once service is challenged, plaintiffs bear the burden of establishing that service

was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).

Courts may consider evidence outside the pleadings, such as affidavits,

depositions, and oral testimony, in resolving a Rule 12(b)(5) motion.  *Fairbank v.*

*Underwood*, 986 F.Supp.2d 1222, 1228 (D. Or. 2013).

Giacomazza argues Plaintiffs failed to timely serve the Complaint on her.

Giacomazza further argues that no permissible method of service was completed.

Plaintiffs counters that Giacomazza was properly served.

### A.   Timeliness of Service

Fed. R. Civ. P. 4(m) provides that the plaintiff must serve a summons and

copy of the complaint on a defendant "within 90 days after the complaint is filed."

Here, the Complaint was filed on June 22, 2018.  (Doc. 1.)  Thus, service was

required to be completed by September 20, 2018.  Fed. R. Civ. P. 6(a)(1).

8

According to the Affidavit of Service, the summons and Complaint were left at Giacomazza's office on September 21, 2018 and were mailed to her on September 24, 2018.  (Doc. 28.)  Service was therefore not timely completed.

Rule 4(m) provides that if the plaintiff shows good cause for the failure to timely serve the complaint, the Court must extend the time for service for an appropriate period.  Fed. R. Civ. P. 4(m).  Plaintiffs did not seek an extension of the service deadline before the expiration of the service period.  Nevertheless, the Ninth Circuit has held courts have discretion to grant an extension of time to serve the complaint even after the service period has expired.  *Mann v. Am. Airlines*, 324 F.3d 1088, 1090 (9th Cir. 2003).  The Supreme Court has further noted that courts have discretion under Rule 4(m) "to enlarge the [service] period 'even if there is no good cause shown.'"  *Henderson v. United States*, 517 U.S. 654, (1996) (quoting Fed. R. Civ. P. 4(m) Advisory Committee's Notes to 1993 Amendment).

Plaintiffs argue there is good cause to extend the 90-day period because Giacomazza was deliberately avoiding service.  Plaintiffs claim they tried to serve Giacomazza at her office three times in July 2018, but her co-workers were "covering for her and she [would] not come out to accept service."  (Doc. 39-1 at ¶ 6.)  The Court finds it is equally likely that Giacomazza was simply out of the office when service was attempted on those occasions.  Regardless, difficulty in serving a defendant constitutes good cause to grant an extension.  *See* Rule 4(m)

Advisory Committee's Notes to 2015 Amendment ("More time may be needed, for example, when . . . a defendant is difficult to serve[.]").

Here, the Court finds it would not unduly prejudice Giacomazza to grant Plaintiffs a brief *nunc pro tunc* extension of the service deadline. District courts routinely grant such extensions to cure de minimis delays in service. *See e.g. Montana v. Drive Time Credit Corp.*, 2016 WL 3156060, at *1 (D. Nev. June 2, 2016) (granting 19-day extension *nunc pro tunc* and deeming service on the defendant timely where the defendant did not suffer prejudice from the delay); *Hong v. Recreational Equip., Inc.*, 2019 WL 2124529, at *1 (C.D. Cal. May 15, 2019) ("[Defendant] appears to have suffered no prejudice from the one day delay in service, and this Court therefore declines to dismiss Plaintiff's claims against [Defendant] for failure to timely serve.") *United States ex rel. Maharaj v. Estate of Zimmerman*, 427 F.Supp.3d 625, 653-54 (D. Md. 2019) (extending deadline for service of process by one day to allow for day-late service of process). The Court, therefore, will deem the summons and complaint timely served.

**B.      Sufficiency of Service**

Fed. R. Civ. P. Rule 4(e) governs service upon individuals. It provides that service of process may be accomplished by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

Because this Court is located in Montana and Giacomazza was served in New York, service of process could have been made pursuant to Montana law or New York law.  Fed. R. Civ. P. 4(e)(1).

Rule 4(e)(2) further allows service to be made by "(A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process."

Therefore, Plaintiffs could have perfected service of process in this case under the service requirements of Montana or New York law or under the requirements of Fed. R. Civ. P. 4(e)(2). [3]

a.   Service under Fed. R. Civ. P. 4(e)(2)

Plaintiffs have not established proper service under Rule 4(e)(2).  It is undisputed that Giacomazza was not personally served.  It also does not appear that she was served at her "dwelling or usual place of abode."  The Affidavit of

---

[3] Plaintiffs also argue that Giacomazza's counsel represented on multiple occasions that she would answer or otherwise respond to the Complaint on a specific date, thereby leading them to believe she was not disputing service.  Thus, they contend she should be equitably estopped from challenging the sufficiency of service.  As previously discussed, however, it is apparent that on August 28, 2018, Giacomazza's counsel told Plaintiffs they did not believe she had been properly served.  As such, they Court declines to equitably estop Giacomazza from contesting service.

Service states the Complaint was left with a "co-worker" at Giacomazza's "dwelling house (usual place of abode)." (Doc. 28.) But the address listed for service is Pantaenius' business address. (*Compare* Doc. 28 (Affidavit of Service listing service address as 500 Mamaroneck Ave, Harrison, NY 10528) and Doc. 19-2 (policy listing Pantaenius' New York business address as 500 Mamaroneck Ave, Harrison, NY 10528).) The Court will, therefore, assume that the summons and Complaint were left at Giacomazza's place of business and not at her home.

Therefore, to satisfy the requirements of Rule (4)(e)(2), service must have been accomplished by delivery to an authorized agent. That does not appear to be the case. The Complaint was left with a co-worker at Giacomazza's office. Plaintiffs have not presented any evidence indicating the unnamed co-worker was an authorized agent who could accept service on behalf of Giacomazza. Courts have routinely held that individuals cannot be served by merely leaving a complaint and summons with an unauthorized coworker. *See e.g. Donnelly v. UMass Correctional Med. Program*, 2010 WL 1924700, *1 (D. Mass. May 11, 2010) ("In the employment context, a person cannot innocently accept service of process on behalf of a coworker without having been explicitly given such authority."); *Mason v. Republic Servs., Inc.*, 2011 WL 283310, *1 (D. Nev. Jan. 25, 2011) (service upon the defendant's coworker who was not authorized to receive service was insufficient as a matter of law); *Haywood v. Bedatsky*, 2007

12

WL 2692857, *1 (D. Ariz. Sept. 11, 2007) (holding delivery of summons and complaint to secretary at the defendant's place of business was insufficient).  As such, service was not accomplished when the summons and Complaint was left with Giacomazza's co-worker.

        b.    <u>Service Under Montana Law</u>

Under Montana law, service may be made delivering a copy of the summons and complaint to the individual personally, or by serving an authorized agent of the individual.  Mont. R. Civ. P. 4(e)(1)-(2).  As discussed above, Giacomazza was not personally served or served through an authorized agent.  Therefore, service was not perfected under Montana law.

        c.    <u>Service Under New York Law</u>

New York law provides for an addition means of perfecting service.  Under New York law, service on an individual can also be accomplished by "leave and mail" service.  N.Y. Civ. Practice Law R. 308.  Leave and mail service may be perfected by "delivering the summons . . . to a person of suitable age and discretion at the actual place of business . . . of the person to be served and by . . . mailing the summons by first class mail to the person to be served at his or her actual place of business . . . ."  N.Y. Civ. Practice Law R. 308(2).  This rule further requires that "proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such delivery or mailing . . . ."  *Id.*

Here, the summons and Complaint were left at Giacomazza's office on September 21, 2018 and were mailed on September 24, 2018. (Doc. 28.) Thus, the actual service requirements of the rule were accomplished. But the proof of service was not filed with the clerk of court within 20 days as required by Rule 308(2).

There appears to be a conflict in New York law as to whether this defect is fatal. In *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F.Supp. 654, 660 (S.D.N.Y. 1997) the federal district court found, without significant discussion or analysis, that service under Rule 308(2) "is ineffective where a plaintiff does not file proof of service with the clerk within twenty days of the date on which the process server mailed the summons and complaint."

Since that decision, however, other courts considering the issue have found that failure to timely file proof of service is not fatal. In *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F.Supp.2d 177, 181 (S.D.N.Y. 2003), for example, the court noted that federal and state courts in New York have found that even the "complete failure to file a proof of service was 'a mere irregularity, non-jurisdictional in nature, which may be corrected by an order *nunc pro tunc*,'" quoting *Durant v. Tranditional Investment, LTD*, 1990 WL 135731, at *3. See also, *King v. Galluzzo Equipment & Excavating, Inc.* 2001 WL 1402996, n. 12 ("a delay in filed proof of service [under Rule 308(2)]is correctable, and will not

14

invalidate otherwise effective service."); and *Haegeland v. Massa*, 75 A.D.2d 864

(N.Y. App. Div. 1980) (court properly found the plaintiff's delay in filing proof of

service [under Rule 308] was a mere procedural irregularity to be corrected by

order nunc pro tunc").

The Court finds the latter line of cases to be more persuasive.  The fact that

proof of service was not timely filed in this case does not alter the that fact that the

Affidavit of Service shows that Giacomazza was properly served under the rule.

The purpose of service of process rules is to "provide[] defendants with sufficient

notice 'to apprise interested parties of the pendency of the action and afford them

an opportunity to present their objections.'"  *Whidbee v. Pierce County*, 857 F.3d

1019, 1024 (9th Cir. 2017) (quoting *Mullane v. Central Hanover Bank & Trust

Co.*, 339 U.S. 306, 314 (1950).  The failure to file proof of service does nothing to

negate the sufficiency of the notice or the opportunity to defend.  The Court agrees

with those authorities which find the proof of service requirement to be a non-

jurisdictional irregularity which can be cured after the 20-day period.  Accordingly,

the Court finds service was accomplished pursuant to New York law.

## IV.    MOTION TO DISMISS PURSUANT TO RULE 12(b)(2) FOR LACK OF PERSONAL JURISDICTION

Giacomazza argues this Court does not have personal jurisdiction over her

because she lacks sufficient minimum contacts with Montana.  Plaintiffs counter

that Giacomazza transacted business in Montana and committed acts that resulted in the accrual of tort actions in Montana.

When a defendant moves to dismiss a claim for lack of personal jurisdiction, the plaintiff bears the burden of proving that personal jurisdiction exists. *Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Nat. Gas Antitrust Litig.)*, 715 F.3d 716, 741 (9th Cir. 2013) (internal citations omitted). Where the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (2004). A court's duty is to inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction, accepting the plaintiff's allegations as true. *Id.* Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true. Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Id.*

To exercise personal jurisdiction over a non-resident defendant in a diversity case, a federal court must make the following determinations: (1) whether an applicable state rule or statute confers personal jurisdiction over the defendant; and (2) whether assertion of jurisdiction comports with constitutional principles of due process. *Data Disc Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1286 (9th Cir. 1977). With respect to the first inquiry, this Court is bound to look to

16

Montana law.  *Haywood v. Travelers Indem. Co. of Am.*, 2006 WL 2860588, at *2 (D. Mont. October 3, 2016).

The Montana Supreme Court has articulated a similar two-part test to determine the existence of personal jurisdiction: (1) the court must ascertain whether personal jurisdiction exists pursuant to Montana Rule of Civil Procedure 4(b)(1), Montana's long-arm statute; and (2) the court must assess whether asserting such jurisdiction is consistent with "traditional notions of fair play and substantial justice embodied in the due process clause."  *Cimmaron Corp. v. Smith*, 67 P.3d 258, 260 (Mont. 2003) (*citing Threlkeld v. Colorado*, 16 P.3d 359, 361 (Mont. 2000)); *See also Simmons Oil Corp. v. Holly Corp.*, 796 P.2d 189, 193 (Mont. 1990).

Montana's long-arm statute provides in relevant part:

All persons found within the state of Montana are subject to the jurisdiction of Montana courts. Additionally, any person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, or through an employee or agent, of any of the following acts:

(A)   the transaction of any business within this state; [or]

(B)   the commission of any act resulting in accrual within Montana or a tort action.

Mont. R. Civ. P. 4(b)(1)(A)-(B).

The first sentence of Rule 4(b)(1) establishes the requirements for general jurisdiction.  *Cimmaron Corp.*, 67 P.3d at 260 (*citing Bi-Lo Foods Inc. v. Alpine Bank, Clifton*, 955 P.2d 154, 157 (Mont. 1998)).  The remainder of Rule 4(b)(1)

establishes the requirements for specific jurisdiction. *Cimarron Corp.*, 67 P.3d at 260. In contrast to general jurisdiction, specific jurisdiction requires the controversy be directly related to the defendant's contacts with the forum. *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 137 S.Ct. 1773, 1780 (2017).

If the Court finds it may exercise specific jurisdiction under Mont. R. Civ. P. 4(b)(1), it must next determine whether such exercise is commensurate with the defendant's due process rights under federal law. *Bedrejo v. Triple E Can. Ltd.*, 984 P.2d 739, 742 (Mont. 1999) (*citing Simmons v. State*, 670 P.2d 1372, 1376–77 (Mont. 1983); *Grizzly Sec. Armored Express, Inc. v. Armored Group, LLC*, 255 P.3d 143, 149 (Mont. 2011)).

The Ninth Circuit has developed the following three-part due process test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.[4]  "The plaintiff bears the burden of satisfying the first two prongs of the test.  If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state."  *Id.* (internal citations omitted).

### A.    General Jurisdiction

Plaintiffs do not dispute that there is no basis for asserting general jurisdiction over Giacomazza.  Accordingly, the Court may not exercise general jurisdiction over her.

### B.    Specific Jurisdiction

Giacomazza contends she is not subject to specific personal jurisdiction. She argues she has never transacted business in Montana, did not personally enter into a contract to insure property or risk located in Montana, and did not commit a tort that accrued in Montana.  She asserts that none of the alleged conduct occurred in Montana, rather her communications with Plaintiffs occurred while they were sailing the yacht in the Caribbean.  Giacomazza acknowledges that a copy of a communication sent by e-mail was also mailed to Plaintiffs' address in Montana, but she asserts interstate mail is not sufficient to justify the exercise of personal

---

[4] The Montana Supreme Court adopted this approach in *Simmons Oil Corp*, 670 P.2d at 1378.

jurisdiction.  Therefore, Giacomazza contends this Court cannot exercise specific personal jurisdiction over her.

Plaintiffs counters that Giacomazza is subject to specific jurisdiction because she processed an online quote request that she knew was submitted by Montana residents, called Plaintiffs using their Montana cellphone numbers, and prepared a letter addressed to Plaintiffs in Montana.  Plaintiffs contend Giacomazza therefore subjected herself to suit in Montana.

a.   Whether Personal Jurisdiction Exists Pursuant to Montana Rule of Civil Procedure 4(b)(1)(A) - Transaction of Business in Montana

Montana's long-arm statue provides that a defendant may be subject to specific jurisdiction if the claim against it arises from the "transaction of any business within Montana."  Mont. R. Civ. P. 4(b)(1)(A).  The exercise of personal jurisdiction is proper under Rule 4(b)(1)(A) "where substantial interactions occur in Montana."  *Milky Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 19 (Mont. 2015).  But merely entering into a contract with a Montana resident does not subject a non-resident to jurisdiction.  *Cimmaron Corp. v. Smith*, 67 P.3d 258, 260-61 (Mont. 2003).  Further, telephone and mail communications do not necessarily give rise to jurisdiction.  *Milky Whey*, 342 P.3d at 19.  The Montana Supreme Court explained this is because "interstate communication is an almost inevitable accompaniment to doing business in the modern world, and cannot by itself be

20

considered a 'contact' for justifying the exercise of personal jurisdiction."
*Cimmaron*, 67 P.3d at 261 (*citing Edsall Construction Co. Inc. v. Robinson*, 804
P.2d 1039, 1042 (Mont. 1991)).  *See also Simmons v. State*, 670 P.2d 1372, 1380
(1983) (noting "telephonic and mail communication are generally 'secondary or
ancillary factors' to underlying transactions, and therefore do not provide the
crucial minimum contacts."); *Richardson v. Am. Family Ins. Co.*, 643 F.Supp. 364,
367 (D. Mont. 1986) (finding non-resident insurer did not subject itself to personal
jurisdiction in Montana merely by using interstate mail and telephone services to
contact Montana residents about an insurance claim that was related to an accident
that occurred in Missouri).

Here, as an employee of Pantaenius, Giacomazza did not personally enter
into any contract with Plaintiffs.  Rather, she responded on behalf of her employer,
to an online quote request that was initiated by Plaintiffs while they were
physically located in the Caribbean, concerning insurance for a yacht that was not
located in Montana.  In addition, Giacomazza has never worked in Montana, does
not solicit business in Montana, and has no physical presence in Montana.
Plaintiffs point out that Pantaenius is registered with the state of Montana to sell
insurance in Montana, and it advertises on its website that it is "a licensed
insurance agent in all 50 states."  (Doc. 39 at 11.)  This does not subject
Giacomazza to personal jurisdiction, however.  "[J]urisdiction over an employee

21

does not automatically follow from jurisdiction over the corporation which employs him." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781, n. 13 (1984). Accordingly, it appears Giacomazza personally has done nothing to reach into Montana or avail herself of the privilege of doing business in the state.

Plaintiffs cite *Cataraha v. Elemetal Prisom, LLC*, 2018 WL 3448283 (D. Mont. July 17, 2018) for the proposition that personal jurisdiction may be asserted over a nonresident who processes online orders and chooses to process out of state orders. *Cataraha*, however, is distinguishable from the facts of this case. In *Cataraha*, the out-of-state defendant sold and shipped its physical products directly into Montana, through a website that facilitated online sales. *Id.* at *3. It also reached out to Montana customers and sent free samples and test kits to them. *Id.* at *4. In contrast, here, Giacomazza did not reach out to Plaintiffs or send any product into Montana. The only action that arguably connected Giacomazza to Montana was the mailing of hard copies of documents that had been sent to Plaintiffs by email, and communicating with Plaintiffs on cellphones that happened to have Montana numbers. Mailing of documents and speaking by cellphone are inevitable interstate communications in the modern business world, and are therefore, not sufficient to justify the exercise of personal jurisdiction. Moreover, Plaintiffs were not located in Montana at the time they communicated with

Giacomazza by telephone, nor was the yacht that was the subject of the insurance policy ever located in Montana.

As such, the Court finds Giacomazza is not subject to personal jurisdiction in Montana under Rule 4(b)(1)(A).

       b.    <u>Whether Personal Jurisdiction Exists Pursuant to Montana Rule of Civil Procedure 4(b)(1)(B) - Accrual of Tort Action in Montana</u>

Specific jurisdiction may also be exercised over a person who commits an act that results in the accrual of a tort action within Montana.  Mont. R. Civ. P. 4(b)(1)(B).  In assessing whether a claim accrued in Montana under Rule 4(b)(1)(B), the court must focus "on where the events giving rise to the tort claims occurred, rather than where the plaintiffs allegedly experienced or learned of their injuries." *Tackett v. Duncan*, 334 P.3d 920, 928 (Mont. 2014).  "A tort does not accrue in Montana when all acts giving rise to the claims occur in another state." *Milky Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 18 (Mont. 2015).  Further, the mere injury to a Montana resident is not a sufficient connection to the forum, *Tackett*, 334 P.3d at 929.  *See also Cimmaron*, 67 P.3d at 261-62 (holding the fact the plaintiff was detrimentally affected within Montana by the defendant's actions in Pennsylvania was not sufficient to establish the accrual of a tort action within Montana); *Tackett*, 334 P.3d at 929 ("[T]he transmission into Montana of material

statements that the defendant allegedly knows are false or fraudulent is insufficient by itself to establish accrual of a fraud or deceit action in Montana.").

Here, the pertinent actions that gave rise to Plaintiffs' claims against Giacomazza occurred outside Montana.  While the Plaintiffs were sailing in the Caribbean, they submitted an online request for an insurance quote through Pantaenius' website.  Giacomazza processed the request from New York, where Pantaenius is located.   Giacomazza subsequently communicated with Plaintiffs by email and telephone while they were located in the Caribbean and Puerto Rico in order to process their insurance application.  When the policy was issued, Giacomazza emailed the insurance binder and policy to Plaintiffs – who were still sailing in the Caribbean.  Thus, the specific injury-causing event – the alleged failure to procure appropriate coverage for the yacht – occurred outside Montana.

The fact Plaintiffs may have felt the injury in Montana when coverage was ultimately denied is insufficient to connect Giacomazza to Montana.  *See Milky Whey*, 342 P.3d at 18 (holding a tort does not accrue in Montana where "tortious activity was committed outside the forum state but where the resulting injury was experienced in the forum state.")  Further, as made clear by the U.S. Supreme Court's opinion in *Walden v. Fiore*, 571 U.S. 277, 291 (2014), "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum state."

24

*Id.* The "mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id.*

At most, the evidence shows copies of the insurance documents were also mailed to Montana after the documents were emailed to Plaintiffs in the Caribbean. But that is insufficient for specific jurisdiction. The Montana Supreme Court has determined that jurisdiction under Rule 4(b)(1)(B) "is not acquired through interstate communications pursuant to a contract to be performed in another state." *Bird v. Hiller*, 892 P.2d 931, 934 (Mont. 1995). *See also Threlkeld v. Colorado*, 16 P.3d 359, 365 (Mont. 2000) (holding where the plaintiffs' tort claims related entirely to services to be performed in Colorado, the mere existence of interstate communications relating to those services did not provide a basis for personal jurisdiction over the defendant).

Accordingly, the Court finds Giacomazza's actions did not result in the accrual of a tort action within Montana for purposes of Rule 4(b)(1)(B).

Because the Court finds jurisdiction does not exist under Montana's long-arm statute, the Court may not exercise specific jurisdiction over Giacomazza.[5]

---

[5] The Court notes that Montana's long-arm statute also provides for specific jurisdiction over a person who "contract[s] to insure any person, property, or risk *located within Montana at the time of contracting*." Mont. R. Civ. P. 4(b)(1)(D) (emphasis added). This provision does not subject Giacomazza to personal jurisdiction, however, because neither Plaintiffs nor the yacht were located in Montana at the time Plaintiffs obtained the policy.

*Cimmaron*, 67 P.3d at 260 (stating that if personal jurisdiction does not exist under Rule 4(b)(1), further analysis of whether the exercise of personal jurisdiction comports with due process is unnecessary).

## V.   CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that Giacomazza's Motion to Dismiss (Doc. 34) should be **GRANTED**, and Plaintiffs' claims against her (Counts I-VII) should be **DISMISSED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 25th day of September, 2020.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge